UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

GOVERNOR JESSE VENTURA, a/k/a
James G. Janos, individually,

      Plaintiff,

v.

JANET NAPOLITANO, in her official
capacity as Secretary of the Department of
Homeland Security; THE UNITED
STATES DEPARTMENT OF HOMELAND
SECURITY; JOHN S. PISTOLE,
in his official capacity as Administrator of the
Transportation Security Administration, and
THE UNITED STATES TRANSPORTATION
SECURITY ADMINISTRATION,

      Defendants.

Court File No. _____

---

## COMPLAINT

Plaintiff, Governor Jesse Ventura, for his claims against the defendants, Janet Napolitano, in her official capacity as Secretary of the Department of Homeland Security; the United States Department of Homeland Security; John S. Pistole, in his official capacity as Administrator of the Transportation Security Administration; and the United States Transportation Security Administration, states and alleges that:

### THE PARTIES

1. Plaintiff, Governor Jesse Ventura, a/k/a, James G. Janos ("Governor Ventura"), is an individual citizen and resident of the State of Minnesota.

2. Defendant United States Department of Homeland Security ("DHS") is an a agency of the United States of America.

3. Defendant Janet Napolitano ("Napolitano") is the Secretary of DHS, and is a party hereto in her official capacity.

4. Defendant Transportation Security Administration ("TSA") is an agency of the United States of America, and is a component of DHS charged pursuant to 49 U.S.C. § 114 with ensuring the safety of all modes of transportation, including air travel.

5. Defendant John S. Pistole is the Administrator of the TSA, and is a party hereto in his official capacity.

## NATURE OF THE ACTION

6. Pursuant to Federal Rules of Civil Procedure 57 (Declaratory Judgments) and 28 U.S.C. § 2201 *et seq.* (Declaratory Judgment Act), Governor Ventura seeks a declaration that TSA and DHS have, and unless enjoined or restrained will continue to violate his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures. Pursuant to 28 U.S.C. § 2202, Governor Ventura further asks the court to award injunctive relief co-extensive with this Court's declaration of rights as is necessary to prevent further and irreparable harm, and to award all other relief which is just and equitable.

## JURISDICTION

7. The Court has jurisdiction of the subject matter pursuant to 28 U.S.C. §§ 1331 and 1346 because Governor Ventura's claims arise under the Fourth Amendment to the United States Constitution, and agencies of the United States are defendants to this civil action.

8. The Court has personal jurisdiction over the named defendants because they have sufficient minimum contacts with this district and the cause of action, are subject to service of process, and all or part of Governor Ventura's claims arise from defendants' commission of acts in this state causing injury or damages.

## VENUE

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), and § 1391 (e)(2) and (3) because a substantial part of the events or omissions giving rise to Governor Ventura's claims occurred, and Governor Ventura resides, in this district.

## STATEMENT OF FACTS

### *Governor Ventura*

10. Governor Ventura is the former Governor of the State of Minnesota, having served in that capacity from 1999 through 2002, the former Mayor of Brooklyn Park, Minnesota, having served in that capacity from 1990 through 1993, and is also a veteran of the United States Navy, having served his country as a member of the Naval Special Forces Underwater Demolition / SEAL Teams.

11. Governor Ventura's current occupation is that of television performer and host for a program titled *Conspiracy Theory*, which airs on the TRU TV network.

12. Incident to his duties and responsibilities as a network television performer and host, Governor Ventura is required to travel frequently and extensively throughout the United States by commercial air.

13. In 2008 Governor Ventura underwent hip replacement surgery, incident to which he received a titanium implant.

14. As a consequence of Governor Ventura's hip replacement surgery, each and every time he passes through an airport screening magnetometer, commonly known as a walk-through metal detector ("WTMD"), the device's alarm is set off by the presence of titanium in his body.

15. Prior to November 2010, each and every time Governor Ventura set off the WTMD alarm, the additional airport security procedures he was subjected included only a non-invasive magnetic hand-wand inspection.

### *TSA'S Enhanced Airport Screening Procedures*

16. Airline passengers, including Governor Ventura, are required by United States Code and Regulations, including, but not limited to 49 U.S.C. § 44901, 49 CFR §§ 1540.105(a)(2) and 1540.107, to comply with TSA's security procedures before entering designated portions of airports within the United States.

17. Since the terrorist attacks of September 11, 2001, TSA has implemented enhanced airport screening procedures, including the phased introduction between 2007 and the present of whole body imaging technology and physical pat-down body searches.

18. Whole body imaging ("WBI") is an umbrella term used to describe a number of technologies, including full body scanners ("FBS") and automated imaging technology ("AIT"), that use either backscatter x-ray or millimeter wave technology to produce detailed, three-dimensional images of the subject's body through and under clothing, including private and sensitive areas of the body.

19. Pat-down body searches require the security officer to run his hands and fingers over and to feel the subject's entire body, including private and sensitive areas of the body.

### *TSA's and DHS's Violations of Governor Ventura's Constitutional Rights*

20. Governor Ventura has traveled on hundreds of commercial flights in the United States over the past 40 years, including more recently two to three flights a week during the filming of *Conspiracy Theory* over the past two years.

21. TSA and DHS have no factual basis to support any reasonable suspicion that Governor Ventura poses any threat to airline safety, nor does he in fact pose any such threat.

22. It is TSA's stated policy and practice that an individual who sets off a WTMD alarm and/or opts out of WBI will be subject to additional security screening. Attached hereto as **EXHIBITS A, B and C**, respectively, and incorporated herein by reference, are true and correct copies of: TSA's *Passenger Security Checkpoints*, as published on the TSA's web site at http://www.tsa.gov/travelers/airtravel/assistant/editorial_1049.shtm and printed on December 20, 2010 ("You will undergo additional screening if you set of the alarm on the metal detector. . . ."); *TSA Airport Screening, Pat-Downs: Myths and Facts*, as published on the TSA's web site at http://www.tsa.gov and printed on December 20, 2010 ("Only passengers who alarm a walk-through metal detector or AIT machine or opt out of the AIT receive a pat-down."); and *Pat-Downs*, as published on the TSA's web site at http://www.tsa.gov/travelers /pat_downs.shtm and printed on December 20, 2010 (pat-downs are used to "resolve alarms at the checkpoint," and "when a person opts out of AIT," but the "vast majority of passengers will not receive pat-downs").

23. Pursuant to TSA's stated policy and practice, Governor Ventura has been required to undergo a pat-down body search, and will be required either to undergo a WBI, if available, or submit to a pat-down body search each and every time he enters airport security, because he cannot pass through a WTMD without setting off the alarm due to the presence of titanium in his body.

24. In November 2010, Governor Ventura set off a WTMD at the Minneapolis-St. Paul International Airport, was directed by TSA agents to submit to additional security and, once so directed, was not free to leave the airport security area or to decline his scheduled flight to

avoid additional screening, which is a seizure of his person, and he was subjected to a pat-down body search, which is a search of his person.

25. Despite Governor Ventura's status as frequent flyer, a veteran of the United States Military and having been the State of Minnesota's highest elected official, and despite his easily verifiable medication condition, TSA did not give him the option of submitting to less intrusive security measures such as use of a magnetic hand wand, nor was he given the option of a "trusted traveler" medical or other exemption from the WBI or pat-down body search procedures.

26. Based on TSA's past practice, and according to TSA's stated policies and procedures, Governor Ventura is not and will not be subject only to random or suspicion-based selection for enhanced search procedures, as are the vast majority of other airline travelers, but instead is and will be specifically, repeatedly and consistently selected for WBI and/or pat-down body searches due to the presence of titanium in his body each and every time he enters a United States airport for a commercial flight.

27. Absent reasonable grounds for suspicion, WBI scans and pat-down body searches are unwarranted and unreasonable intrusions on Governor Ventura's personal privacy and dignity and his right to be free from unreasonable searches and seizures, and are a justifiable cause for him to be concerned for his personal health and well-being.

28. WBI violates Governor Ventura's basic rights to dignity and privacy and his right to be free from unreasonable searches and seizures, because through generation of a three-dimensional image of his person in an unclothed state, which image is viewed by others and can be electronically stored, saved, reproduced and transmitted, the procedure is tantamount to a warrantless, non-suspicion-based, electronically-recorded strip search.

29.     The WBIs, to which Ventura will be repeatedly required by TSA to submit due to his titanium hip implant, meet the definition of unlawful video voyeurism under 18 U.S.C. § 801, and are demeaning and degrading.

30.     The safety of individuals undergoing repeated exposure to WBI-generated radiation is currently the subject of legitimate scientific testing and debate among reputable medical professionals and medical research facilities, including, but not limited to, the publicly reported opinions of scientists and medical doctors associated with Columbia University, the University of California at San Francisco, and the University of California at Berkeley, which have linked WBI to, among other things, skin cancer.

31.     Pat-down body searches violate Governor Ventura's basic rights to privacy and dignity, and his right to be free from unreasonable searches and seizures, because they include warrantless, non-suspicion-based offensive touching, gripping and rubbing of the genital and other sensitive areas of his body.

32.     The pat-down body searches to which Governor Ventura has been and will be required by TSA to submit meet the definition for an unlawful sexual assault under Minn. Stat. § 609.341, and are demeaning and degrading.

33.     On or about November 19, 2010, The United States House of Representatives Committee on Homeland Security expressed its concern to TSA about the "new enhanced pat down screening protocols" because of their "intrusiveness," and urged TSA to reconsider. Attached hereto as **EXHIBIT D** and incorporated by reference is a true and correct copy of the United States House of Representatives Committee on Homeland Security's November 19, 2010, letter to TSA.

34. In the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 613 (codified as amended at 49 U.S.C. § 114), Congress recognized that enhanced airport security procedures should rightfully be focused on those who should be subject to more extensive screening, and that "trusted passenger" programs should be created to expedite the security screening of passengers that qualify.

35. Certain members of Congress are exempt from the WBI and pat-down body search security procedures.

36. Airline pilots are exempt from the WBI and pat-down body search security procedures.

*Actual Controversy and Conduct Capable of Repetition Yet Evading Review*

37. Governor Ventura desires to work and earn a living by performing on television, which is the occupation for which he is particularly well suited.

38. Because Governor Ventura's occupation as a television performer requires him to travel by air, he must either repeatedly and routinely submit to TSA's security procedures that may be hazardous to his health and which are an affront to his personal dignity, privacy and right to be free from unreasonable searches and seizures, or retire from his television work and forego his income.

## CLAIMS FOR RELIEF

### COUNT I
### DECLARATORY RELIEF

39. Governor Ventura restates and adopts the allegations in paragraphs 1 through 38, above.

40. The Fourth Amendment to the United States Constitution requires the government to respect the right of the people to be secure in their persons and effects against unreasonable searches and seizures.

41. When a government search violates a subjective expectation of privacy that society recognizes as reasonable, the subject of the search is entitled to the protections afforded by the Fourth Amendment to the United States Constitution.

42. To satisfy the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, airport security searches must be minimally intrusive, well-tailored to protect personal privacy, and neither more extensive nor more intensive than necessary under the circumstances to rule out the presence of weapons or explosives.

43. The November 2010 pat-down body search to which Governor Ventura was subjected was not minimally intrusive, was not well-tailored to protect personal privacy, and was more extensive and intensive than necessary under the circumstances because it violated his reasonable expectation of privacy and exposed him to humiliation and degradation through unwanted touching, gripping and rubbing of the intimate areas of his body.

44. Absent reasonable suspicion of wrongdoing, mandatory, frequent and repeated pat-down body searches of Governor Ventura are not minimally intrusive, are not well-tailored to protect personal privacy, and are more extensive and intensive than necessary under the circumstances because they violate Governor Ventura's reasonable expectation of privacy and expose him to humiliation and degradation through unwanted touching, gripping and rubbing of the intimate areas of his body.

45. Absent reasonable suspicion of wrongdoing, mandatory, frequent and repeated WBI searches of Governor Ventura are not minimally intrusive, are not well-tailored to protect

personal privacy, and are more extensive and intensive than necessary under the circumstances because they may expose Governor Ventura to potentially dangerous radiation, and because they violate his reasonable expectation of privacy and subject him to humiliation and degradation through unwanted exposure of his unclothed body to others.

46. TSA's stated policy and practice of repeatedly requiring Governor Ventura to undergo either an offensive, intrusive, humiliating, degrading and potentially dangerous WBI, or an offensive, intrusive, humiliating and degrading pat-down body search in the absence of any reasonable suspicion of wrongdoing and in lieu of less intrusive search methods, violates his Fourth Amendment right to be free from unreasonable searches and seizures.

47. Pursuant to Rule 57 of the Federal Rules of Civil Procedure (Declaratory Judgments) and 28 U.S.C. § 2201 *et seq.* (Declaratory Judgment Act), Governor Ventura is entitled to a declaration that TSA and DHS have, and unless enjoined or restrained will continue to violate his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, and/or declaring the parties' respective rights, duties and liabilities to one another.

48. Governor Ventura has no other adequate and speedy remedy at law, and a declaration of rights is necessary and proper for a resolution of the dispute.

### COUNT II
### INJUNCTIVE RELIEF

49. Governor Ventura restates and adopts the allegations in paragraphs 1 through 49, above.

50. Governor Ventura has been injured by TSA's and DHS's violation of his Fourth Amendment rights, continuing and future injury is imminent and, absent issuance of an

injunction, violations of Governor Ventura's Fourth Amendment rights are substantially probable to reoccur under circumstances capable of repetition yet evading review.

51.     Pursuant to 28 U.S.C. § 2201 (Declaratory Judgment Act), Governor Ventura is entitled to such other and further relief as may be appropriate based on the Court's declaratory judgment including, but not limited to, temporary and permanent injunctive relief enjoining and restraining TSA and DHS from violating his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

52.     Governor Ventura has no other adequate and speedy remedy at law, and injunctive relief co-extensive with this Court's declaration of rights is necessary to prevent further and irreparable harm.

**WHEREFORE**, Governor Ventura respectfully asks that the Court:

(a)     Enter judgment in his favor and against the defendants declaring that TSA and DHS have, and unless enjoined or restrained will continue to violate his rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures;

(b)     Enter judgment in his favor and against the defendants enjoining and restraining them from unreasonable searches and seizures, including but not limited to subjecting Governor Ventura to warrantless and suspicionless WBI and pat-down body searches;

(c)     Award his costs and disbursements, including reasonable attorneys' fees incurred herein; and

(d)     Award all other relief which the Court deems to be just and equitable.

|  |  |
|---|---|
|  | HENSON & EFRON, P.A. |
| Dated: January 24, 2011 | By  s/David Bradley Olsen<br>    David Bradley Olsen, 197944<br>    Wesley T. Graham, 34574X<br>220 South Sixth Street, Suite 1800<br>Minneapolis, Minnesota 55402-4503<br>Telephone: 612-339-2500<br>Facsimile: 612-339-6364<br>e-mail: dolsen@hensonefron.com<br>          wgraham@hensonefron.com<br><br>Attorneys for Plaintiff Governor Jesse Ventura |

411956.DOC

12