# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| GOVERNOR JESSE VENTURA, a/k/a ) | | |
| James G. Janos, individually, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 11-cv-00174 (SRN/AJB) | |
| ) | | |
| JANET NAPOLITANO, ) | | |
| Secretary of the Department of ) | | |
| Homeland Security, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |
| _____ ) | | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

Plaintiff Governor Jesse Ventura, seeks to permanently enjoin the Transportation Security Administration ("TSA") from applying to him its standard procedure for screening individuals at airports. Specifically, Plaintiff claims that TSA's use of Advanced Imaging Technology ("AIT") machines and alternative pat-down procedures as applied to him violates his rights under the Fourth Amendment.

As explained below, however, this Court lacks subject matter jurisdiction to hear Plaintiff's claims. TSA's current procedure for screening individuals at airport checkpoints was issued by order of the Administrator of TSA on September 17, 2010, in the form of a revised Screening Checkpoint Standard Operating Procedure ("Screening Checkpoint SOP"), in order to better secure the nation against the serious threat posed by terrorists who seek to use nonmetallic explosives and weapons against airplanes, their passengers, and those on the ground. Under federal law, exclusive jurisdiction over such

aviation and security-related orders of TSA lies with the courts of appeals, pursuant to 49 U.S.C. § 46110.   Plaintiff's claims therefore cannot proceed in this Court, and his Complaint must be dismissed.

## BACKGROUND

### I.    STATUTORY AND REGULATORY FRAMEWORK

#### A.    Federal Authority Over Aviation Security Systems and Passenger Screening.

Federal law prohibits conduct that is threatening or dangerous to airline security and safety, such as engaging in "aircraft piracy," 49 U.S.C. § 46502(a); interfering with the duties of a flight crew member or flight attendant, *id.* § 46504; and taking any action that poses an imminent threat to the safety of an aircraft or individuals on board, *id.* § 46318.   Further, it is a crime to have a concealed weapon, loaded firearm, or an explosive or incendiary device on one's person or in one's property while on board, or attempting to board, an aircraft.   *Id.* § 46505.

Following the terrorist attacks of September 11, 2001, Congress created TSA to better protect all modes of transportation, and specifically charged the Administrator of TSA with overall responsibility for civil aviation security.   *See id.* § 114(d); 6 U.S.C. § 202(1).   As part of this responsibility, the Administrator of TSA, together with the Director of the Federal Bureau of Investigation ("FBI"), must "assess current and potential threats to the domestic air transportation system," including the "extent to which there are individuals with the capability and intent to carry out terrorist or related unlawful acts against that system and the ways in which those individuals might carry out

those acts." 49 U.S.C. § 44904(a).  Recognizing the ever-changing nature of aviation threats, Congress required TSA and FBI to engage in a "continuous analysis and monitoring" of such security threats.  *Id.*  The Administrator of TSA is further charged with taking "necessary actions to improve domestic air transportation security by correcting any deficiencies" that are discovered through this continuous monitoring.  *Id.* § 44904(e); *see also* 49 U.S.C. § 44903(b).

To fulfill its responsibility for securing the nation's aviation system, TSA relies on multiple mechanisms and layers of defense.  *See generally* Statement of Janet Napolitano, Senate Committee on Commerce, Science and Transportation, Jan. 20, 2010, *available at* http://commerce.senate.gov/public/?a=Files.Serve&File_id=e5b29bd1-2ded-491e-83dc-f62852eb46b2 (providing overview of current state of aviation security).  For example, Congress requires that passengers be pre-screened by comparing passenger information to No-Fly or Selectee lists maintained by the federal government.  49 U.S.C. § 44903(j).  Further, Congress has directed TSA to provide for "the screening of all passengers and property . . . . before boarding," in order to ensure that no passenger is unlawfully carrying a dangerous weapon, explosive, or other destructive substance.  *Id.* §§ 44901(a), 44902(a), 114(e).

In this regard, Congress has mandated that TSA give high priority to deploying new technologies at airport screening checkpoints to detect "nonmetallic, chemical, biological, and radiological weapons, and explosives, in all forms" on individuals and in their property, including such explosives that "terrorists would likely try to smuggle aboard."  *Id.* § 44925(a).  In June 2008, the Senate Appropriations Committee

specifically acknowledged the importance of "emerging technologies at passenger screening checkpoints," including advanced imaging technologies, which "provide an increased level of screening for passengers by detecting explosives and other non-metal objects that current checkpoint technologies are not capable of detecting."  S. Rep. No. 110-396, 2008 WL 2502304, at *60 (2008).  The Senate Committee expressed its desire that "funds for whole body imaging continue to be spent by TSA on multiple imaging technologies, including backscatter and millimeter wave."  *Id.*  In line with these specific congressional directives, and based on the latest intelligence as well as assessments of available technologies, TSA has introduced AIT scanners as part of its multi-layered standard security procedure, which includes metal detectors, pat-downs, and other measures.  Declaration of Lee R. Kair, Assistant Administrator for Security Operations for TSA ("Kair Decl.") ¶¶ 13-18.[1]  When TSA deploys an AIT machine to a screening checkpoint, signs are placed at the checkpoint to inform individuals of the use of the AIT machines prior to screening.  *Id.* ¶ 21. [2]  This notice also advises such individuals that they may decline AIT screening and opt to be screened by a pat-down instead.  *Id.*

---

[1] The two types of AIT machines that TSA has approved and directed for use in primary screening are known as "millimeter wave" (which uses radio waves) and "backscatter x-ray" (which uses very small amounts of x-ray) walk-through machines.  Kair Decl. ¶¶ 16-17.

[2] AIT machines have not been deployed to all airports.  As of January 2011, TSA has deployed 486 AIT machines to 78 airports nationwide.  Kair Decl. ¶ 19. The Screening Checkpoint SOP provides that where an AIT machine has not been deployed to a particular airport or screening checkpoint, metal detectors are employed as the primary screening method, along with other alternative and supplemental methods as needed. *Id.* ¶ 20.

In carrying out its mandate to provide aviation security, TSA issues Standard Operating Procedures ("SOPs") that apply to specific aspects of the security screening process, and which "set forth the uniform procedures and standards that must be followed in TSA's security operations." Kair Decl. ¶ 10. TSA's "Screening Checkpoint" SOP sets forth in detail the mandatory procedures that TSA screening officers must apply in screening individuals, and that individuals must follow prior to boarding an aircraft. *Id.* Compliance with security procedures, including those directed by the Screening Checkpoint SOP, is a mandatory precondition for proceeding past the security checkpoint and for boarding a flight. *See* 49 C.F.R. §§ 1540.105(a)(2) (prohibiting individuals from entering a secured or sterile airport area "without complying with the systems, measures, or procedures being applied to control access to, or presence or movement in, such areas"); 1540.107(a) ("No individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person . . . in accordance with the procedures being applied to control access to that area or aircraft . . . ."); *see also* 49 U.S.C. §§ 44901-44903.

On September 17, 2010, the Administrator of TSA issued a newly revised Screening Checkpoint SOP, which had an implementation date of October 29, 2010. Kair Decl. ¶ 11.[3] This SOP, which included the most recently updated procedures for

---

[3] The SOP itself is not being filed with this motion, because SOPs constitute Sensitive Security Information ("SSI") pursuant to 49 U.S.C. § 114(r) and 49 C.F.R. parts 15 and 1520, and cannot be publicly released. Kair Decl. ¶ 10 n.1. SSI is "information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act," the disclosure of which has been determined, *inter alia*, to be detrimental to the security of transportation. 49 U.S.C. § 114(r). Pursuant to regulations, the

detecting nonmetallic explosive devices and weapons, represents TSA's final decision directing the use of AIT machines, as well as the use of revised procedures for the standard pat-down. *Id.* The pat-down was revised in this SOP to account for the latest intelligence regarding nonmetallic threats. *Id.* ¶¶ 22-23.[4]

### B.  Special Review of Orders Related to Aviation Security.

Subtitle VII of Title 49 of the U.S. Code (covering Aviation Programs) contains a judicial review provision pertaining to "orders" by the Secretary of Transportation, the Administrator of TSA, or the Administrator of the Federal Aviation Administration ("FAA") that are issued "in whole or in part" under Part A (Air Commerce and Safety) or Part B (Airport Development and Noise) of Subtitle VII of Title 49, or subsection (l) or (r)[5] of 49 U.S.C. § 114.  *See* 49 U.S.C. § 46110(a).  Under this provision, a person

---

following are all deemed SSI and thus may not be publicly released:  TSA Security Directives or orders; the identities of individuals on the No Fly and Selectee Lists; and "Security screening information" including "*[a]ny procedures . . . instructions, and implementing guidance pertaining thereto, for screening of persons* . . . that is conducted by the Federal government or any other authorized person." 49 C.F.R. §§ 1520.5(b)(1)&(2), 1520.5(b)(9) (emphasis added), 1520.9.  Defendants maintain that Plaintiff's Complaint can be dismissed for lack of jurisdiction based on information that is in the public domain, including the attached Declaration.  However, upon this Court's request, Defendants can provide the Court with the Screening Checkpoint SOP for *in camera*, *ex parte* review.

[4] As explained by the Declaration of Assistant Administrator Kair, the SOP has been revised over the years when TSA has made a final determination that a change to security screening procedures is necessary.  Kair Decl. ¶ 12.  For example, in 2004, the SOP was revised to include changes to the pat-down protocols after terrorists destroyed two Russian aircraft using explosives concealed on female passengers, and in 2006, it was revised to include the ban on liquids in carry-on luggage, following the liquid explosive terrorist plot regarding flights originating in the U.K.  *Id.*

[5] Although section 46110 refers to "subsection (1) or (s) of section 114," subsection (s) of

"disclosing a substantial interest in [such] an order" may apply for review of the order by filing a petition in the U.S. court of appeals for the circuit in which that person resides or in the Court of Appeals for the D.C. Circuit.   The court of appeals "has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the [Secretary of Transportation, TSA Administrator, or FAA Administrator] to conduct further proceedings."   *Id.* § 46110(c).  TSA "considers the [Screening Checkpoint] SOP to be a 'final order' pursuant to 49 U.S.C. § 46110."  Kair Decl. ¶ 11.

## II.    FACTUAL ALLEGATIONS

Plaintiff, Governor Jesse Ventura, alleges that he travels frequently and extensively throughout the United States by commercial air.  Compl. ¶ 12.  Plaintiff alleges that, in 2008, he underwent hip replacement surgery and received a titanium implant and, as a consequence of this implant, he sets off the walk-through metal detector at airports.  *Id.* ¶¶ 13-14.  Prior to November 2010, when he set off the metal detectors, the additional airport security measures consisted of a "magnetic hand-wand inspection." *Id.* ¶ 15.  Plaintiff alleges that, "[s]ince the terrorist attacks of September 11, 2001, TSA has implemented enhanced airport screening procedures, including the phased introduction between 2007 and the present of whole body imaging technology and physical pat-down body searches."  *Id.* ¶ 17.   He further alleges that the pat-down searches "require the security officer to run his hands and fingers over and to feel the

---

section 114 was later redesignated as subsection (r).  *See* Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, § 568(a), 121 Stat. 1844, 2092 (2007).

subject's entire body, including private and sensitive areas of the body." *Id.* ¶ 19. Plaintiff alleges that, because of TSA's policy, he will be subject to the whole body scanners or a pat-down search each time he enters airport security. *Id.* ¶ 23. As a result, he alleges a Fourth Amendment violation. *Id.* ¶¶ 39-52.

## STANDARD OF REVIEW

Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(1), on the ground that the Court lacks subject matter jurisdiction. As the party claiming subject matter jurisdiction in this Court, it is well settled that Plaintiff bears the burden to demonstrate that subject matter jurisdiction exists. *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989).

"The federal courts are courts of limited, not general, jurisdiction." *Thomas v. Basham*, 931 F.2d 521, 522 (8th Cir. 1991). Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). Defendants move to dismiss this action because Plaintiff seeks judicial review of a final order by TSA, and 49 U.S.C. § 46110 dictates that exclusive jurisdiction to review such orders lies in the courts of appeals. Even if a "statute is ambiguous on the subject of judicial review, . . . courts have resolved the ambiguities in favor of initial review of agency action in the court of appeals." *Jaunich v. U.S. Commodity Futures Trading Comm'n*, 50 F.3d 518, 521 (8th Cir. 1995).

–8–

In deciding a motion under Rule 12(b)(1), the Court may consider matters outside the pleadings, such as declarations or other documents.  *See Osborn v. United States,* 918 F.2d 724, 728-30 (8th Cir. 1990).[6]

## ARGUMENT

I. **PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED BECAUSE JURISDICTION IS PROPER ONLY IN THE COURT OF APPEALS.**

A. **Only Courts of Appeals May Consider Challenges to Final Orders of TSA Concerning Aviation Security.**

Plaintiff's challenge to TSA's security screening procedures must be dismissed because the courts of appeals have exclusive jurisdiction over such actions.  Section 46110 of Title 49 of the U.S. Code provides that orders issued by TSA under Part A ("Air Commerce and Safety") of Title 49, Subtitle VII are subject to review only in the courts of appeals.  Specifically, the statute states, in relevant part:

> [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator) in whole or in part under this part, part B, or subsection (l) or [(r)][7] of section 114 may apply for review of the order

---

[6] Because this Court lacks jurisdiction over this action, as explained herein, there is no occasion to now review whether Plaintiff has stated a claim upon which relief could be granted or the underlying merits of his claim.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex Parte McCardle*, 74 U.S. 506, 514 (7 Wall.) (1868)).  Accordingly, the attached Declaration of Assistant Administrator Kair is limited to addressing the facts necessary to establish that subject-matter jurisdiction is lacking.

[7] *See supra* note 5.

> by filing a petition for review in the United States Court of Appeals for the
> District of Columbia Circuit or in the court of appeals of the United States
> for the circuit in which the person resides or has its principal place of
> business . . .

49 U.S.C. § 46110(a).  This section further states that the courts of appeal have "*exclusive jurisdiction* to affirm, amend, modify or set aside any part of [such an] order." *Id.* § 46110(c) (emphasis added).

Thus, pursuant to section 46110, only circuit courts may consider challenges to final orders described in the statute, which include orders issued by FAA or TSA[8] concerning air commerce and safety, including aviation security.  *See Friends of Richards-Gebaur Airport v. FAA*, 251 F.3d 1178, 1184 (8th Cir. 2001) (noting that "a court of appeals reviewing a petition for judicial review of an order of the FAA 'has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order.'") (quoting 49 U.S.C. § 46110(c)).  If such a claim is presented in a district court, it must be dismissed for lack of subject matter jurisdiction.  *See Gilmore v. Gonzales*, 435 F.3d at 1133 (district court lacked jurisdiction to review TSA directive requiring passengers to

---

[8] As quoted, *supra*, the statute refers to "the Under Secretary of Transportation for Security with respect to security duties and powers designated to be carried out by the Under Secretary." *See* 49 U.S.C. § 46110(a).  When TSA was created, Congress appointed the Under Secretary of Transportation for Security as the head of TSA.  49 U.S.C. § 114(b)(1).  In 2002, TSA was transferred from the Department of Transportation to the Department of Homeland Security.  *See* 6 U.S.C. §§ 203(2), 551(d).  Statutory references to the Under Secretary for Transportation Security are deemed to refer to TSA and its Administrator.  *See id.* §§ 552(d), 557; 49 C.F.R. § 1500.3 (stating that the Administrator of TSA is the Under Secretary of Transportation for Security).  Accordingly, courts have universally recognized that section 46110 applies to orders issued by TSA.  *See, e.g.*, *Gilmore v. Gonzales*, 435 F.3d 1125, 1132-34 (9th Cir. 2006); *In re Sept. 11 Lit.*, 236 F.R.D. 164, 174 (S.D.N.Y. 2006) (characterizing the provision's application to TSA orders as being "without dispute").

present identification or be subject to search); *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2d Cir. 2001) ("By its terms, Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order."); *Green v. Brantley*, 981 F.2d 514, 516 (11th Cir. 1993) (hereinafter *Green*) ("Because the courts of appeals have exclusive jurisdiction over cases challenging final orders of the [FAA] . . . the district court lacked subject matter jurisdiction over this action."); *City of Rochester v. Bond*, 603 F.2d 927, 939 (D.C. Cir. 1979) (affirming lower court's dismissal of challenge to FAA order for lack of subject matter jurisdiction).

## B.    The Screening Checkpoint SOP is an Order Under Section 46110.

The security screening procedure challenged here – *i.e.*, the Screening Checkpoint SOP, which sets forth the procedures by which TSA screens individuals at airports, and specifies the conditions for the use of AIT machines and pat-downs – is an order that falls within section 46110's exclusive jurisdictional channel to the courts of appeals.

*First,* the Screening Checkpoint SOP was issued by the Administrator of TSA "in whole or in part under" Title 49, Subtitle VII, Part A ("Air Commerce and Safety"), and pertains to "security duties and powers designated to be carried out by the [TSA Administrator]," thereby falling within the ambit of section 46110.  *See* 49 U.S.C. § 46110(a).   Under 49 U.S.C. §§ 44901-44903 and 44925 (statutes within Part A), Congress requires TSA to provide for the screening of all passengers and property on passenger aircraft, and to prioritize the deployment of new technologies that can detect nonmetallic explosives on individuals and in their personal property at airport screening checkpoints.   TSA regulations mandate that all individuals comply with screening

procedures before entering the "sterile area" of an airport or boarding an aircraft. 49 C.F.R. §§ 1540.107(a), 1540.105(a)(2); *see also* 49 U.S.C. §§ 44901-44903. To enforce these statutory and regulatory mandates, the Administrator of TSA issued the Screening Checkpoint SOP. Kair Decl. ¶¶ 7-15, 23.

*Second*, the Screening Checkpoint SOP constitutes an "order" under section 46110. As the Eighth Circuit has found, in a case involving the predecessor to Section 46110,[9] the term "order" should be read "expansively." *Northwest Airlines v. Goldschmidt*, 645 F.2d 1309, 1313 (8th Cir. 1981); *see also Aviators for Safe & Fairer Regulation, Inc. v. FAA,* 221 F.3d 222, 225 (1st Cir. 2000) (noting that "[t]he term 'order' is read expansively in review statutes generally . . . and [section 46110] specifically") (citations omitted). The Eighth Circuit has determined that final agency action that is capable of review on the administrative record constitutes an order under Section 46110. *Northwest Airlines*, 645 F.2d at 1313-14 & n.9. *See also City of Pierre v. FAA*, 150 F.3d 837, 839-40 (8th Cir. 1998) (noting Ninth Circuit standards of an order under Section 46110 as a decision that is final, contemplates immediate compliance, is public, and is based on an administrative record that permits meaningful appellate review).

The Screening Checkpoint SOP that Plaintiff challenges meets both criteria of being final agency action and being capable of review on an administrative record. The SOP is final agency action; it "imposes an obligation . . . or fixes some legal

---

[9] The judicial review provision of section 46110 was previously codified at 49 U.S.C. § 1486, which was the statute at issue in *Northwest Airlines v. Goldschmidt* and other earlier cases. "The statutes do not materially differ." *Ass'n of Citizens to Protect & Pres. the Env't v. FAA*, 287 F. App'x 764, 766 n.3 (11th Cir. 2008).

relationship." *Northwest Airlines*, 645 F.3d 1314 n.9. It is not "open to further consideration, or conditional on future agency action." *See City of Dania Beach v. FAA*, 485 F.3d 1181, 1188 (D.C. Cir. 2007); *see also City of Pierre*, 150 F.3d at 840-41 (comparing a letter that was "too tentative" to be a final order with one that "stated a final agency position and contemplated immediate compliance). [10] It sets forth mandatory procedures that TSA personnel must apply in screening passengers, and which passengers must follow. Kair Decl. ¶ 10. Moreover, like prior revisions, the SOP was issued only after TSA made a final determination that changes to the standard procedures were necessary to maximize security and minimize passenger inconvenience and invasiveness in response to evolving threats. Kair Decl. ¶ 12. Accordingly, it represents the consummation of agency decisionmaking. *Cf. Mass. v. U.S. Nuclear Regulatory Comm'n*, 878 F.2d 1516, 1519-20 (1st Cir. 1989) (noting that a relevant consideration in determining finality under the Hobbs Act is "whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication") (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

The Screening Checkpoint SOP also is capable of review on an administrative

---

[10] That the September/October SOP was a revised version of previous SOPs, and that it will, at some point, be superseded by an updated SOP, *see* Kair Decl. ¶ 12, does not defeat the September/October SOP's status as a final order. *Accord Northwest Airlines,* 645 F.2d at 1314 n.9 (finding the FAA's allocation of slots to airlines at airports to be final, even though it was "only a temporary allocation of slots," because it affected the rights of airlines); *City of Dania Beach*, 485 F.3d at 1188-89 (holding that an FAA letter that "at the very least . . . provide[d] a new interpretation of [a] program in light of . . . changed circumstances" was a final order).

record.  *Northwest Airlines*, 645 F.2d at 1314.  The requisite record "need not be substantial so long as the agency's position is definitive and clearly expressed."  *Aviators for Safe & Fairer Regulation*, 221 F.3d at 225.  In fact, even a single letter has been found to suffice.  *See San Diego Air Sports Ctr., Inc. v. FAA*, 887 F.2d 966, 969 (9th Cir. 1989).  In this respect, Defendants note that the Screening Checkpoint SOP, as well as other documents created and reviewed by TSA in connection with the SOP, would constitute a sufficient administrative record for review of Plaintiff's claims. Indeed, in response to another challenge against TSA's use of AIT scanners that was brought directly in the court of appeals pursuant to section 46110, Defendants have filed an administrative record.  *See EPIC v. Napolitano*, Case No. 10-1157 (D.C. Cir.), Doc. No. 1269737 (certified index to record).

Other factors also demonstrate that the Screening Checkpoint SOP is an order under section 46110.  The SOP "contemplates immediate compliance."  *City of Pierre*, 150 F.3d at 840.  The Screening Checkpoint SOP sets forth the rules that screened individuals must follow; if these individuals do not comply with the procedures set forth in the SOP, by virtue of 49 C.F.R. §§ 1540.105 and 1540.107, they are not permitted to enter the "sterile area" of an airport or to board a plane.  *See* Kair Decl. ¶ 10; *see also City of Dania Beach*, 485 F.3d at 1188 (holding that a letter was a final order because it provided "marching orders").

That the SOP itself is not publicly available is immaterial to its status as an "order" under section 46110, as numerous courts have recognized.  *See Gilmore*, 435 F.3d at 1130-31, 1133 & n.8 (finding that non-public security directive constituted an

"order" that did not have to be provided to plaintiff); *Green v. TSA*, 351 F. Supp. 2d

1119, 1127-28 (W.D. Wash. 2005) (hereinafter *Green v. TSA*) (same).[11]  While *City of*

*Pierre* mentioned that an order under Section 46110 must be public, it did so without

analysis and merely recited the elements as listed in an unpublished Ninth Circuit case,

*City of Arcata v. Slater,* 133 F.3d 926, No. 97-71015, 1997 WL 812258 (9th Cir. Dec. 24,

1997).  150 F.3d at 840.  It is clear from the context of the citations in *City of Arcata*, the

cases cited therein, and subsequent Ninth Circuit published cases, that the court was

discussing notice to the public about the order, which exists here, rather than an order that

has been published.[12]  Plaintiff, like all others entering security checkpoints at airports, is

---

[11] Similarly, that Plaintiff "[was] not [a] part[y] to the proceedings from which the order[] . . . arose" also "do[es] not matter," because "[s]tatutory review is . . . an adequate means of reviewing [Plaintiff's] allegations." *City of Rochester*, 603 F.2d at 936.  Consequently, the court in *Scherfen v. DHS*, No. 08-1554, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010) found that TSA's security directive, which established the security protocols for individuals on the No-Fly and Selectee lists, as well as the agency's review of an individual's status vis-à-vis those lists, each constituted an "order" under section 46110, notwithstanding the fact that Plaintiffs did not have access to the actual security protocols and the agency did not disclose the Plaintiffs' status vis-à-vis the No-Fly or Selectee list. *Id.* at *10-11.

[12] *City of Arcata v. Slater* cites *National Air Transportation Association v. McArtor*, 866 F.2d 483 (D.C. Cir. 1989), for the requirement that an order be public.  *McArtor* focused exclusively on the notice to the public, so that persons are able to challenge the order within the 60-day statutory time limit, rather than any requirement that the order itself be public.  866 F.3d at 485.  In *McArtor*, the court held that an FAA rule did not give adequate notice to the public on one issue addressed therein because the language was unclear, but that an FAA Advisory Circular issued three years later gave the requisite notice of the agency's action.  *Id.* at 485-86.  Therefore, the 60-day time limit to challenge the order was tolled until after the Circular was published.  *Id.*  Moreover, to the extent that the Eighth Circuit, through *City of Pierre*, relies on Ninth Circuit case law for the elements of an order under Section 46110, the Ninth Circuit has subsequently held that an order under Section 46110 need not be public.  *See Gilmore*, 435 F.3d at 1130-31, 1133 & n.8.  Indeed, neither *City of Pierre* nor *City of Arcata* dealt with orders that are

notified of the screening procedures and requirements.  Signage is used to inform the public when AIT machines are used, and notice is given to passengers that they may decline the AIT screening and be screened by a pat-down instead.  Kair Decl. ¶ 21.  It is undisputed that Plaintiff had notice here by virtue of his being screened, as alleged in his complaint, and filed a lawsuit challenging the SOP following his experience with the new screening procedures.

Thus, when viewed against these standards, the Screening Checkpoint SOP constitutes an order that must be reviewed by a court of appeals under section 46110, because it represents a final definitive statement of TSA's screening procedures and requirements at airport checkpoints.  The SOP is not merely a draft or a proposal; rather, it sets forth the uniform standards and procedures that airport security screening officers must impose on air travelers, and thus it imposes an "obligation" upon all those affected. Indeed, at least one challenge to AIT has already been filed directly in the United States Court of Appeals for the District of Columbia, pursuant to section 46110.  *See EPIC v. Napolitano*, Case No. 10-1157 (D.C. Cir.).

This case is very similar to the case of *Thomson v. Stone*, No. 05-70825, 2006 WL 770449 (E.D. Mich. Mar. 27, 2006), in which the district court held that it lacked jurisdiction over a challenge like that of Plaintiff's.  In *Thomson*, an airline passenger whose prosthetic leg routinely set off airport metal detectors raised a Fourth Amendment challenge to the pat-down procedures used to screen her.  2006 WL 770449, at *1.  The

---

themselves SSI, which pursuant to regulation, cannot publicly be disclosed, and which the Ninth Circuit in *Gilmore* expressly held were final orders.

court found that the plaintiff's claims necessarily involved TSA's Standard Operating Procedure for screening passengers with disabilities, which the court concluded was only reviewable by a court of appeals under section 46110.  *Id.* at \*3-6.

The issuance of the Screening Checkpoint SOP bears a striking resemblance to other TSA and FAA actions that have been held, under similar circumstances, to constitute orders that are reviewable only in the courts of appeal.  For example, in *Gilmore v. Gonzales*, the plaintiff raised a constitutional challenge to TSA's passenger identification policy, which had required airline passengers to present identification or be subjected to a more intensive "selectee" screening search.  435 F.3d at 1130.  The Ninth Circuit held that the identification policy – issued via a non-public security directive and enforced by airport security personnel – was a final order within the meaning of section 46110 because it "prevent[ed] from air travel those who, like Gilmore, refused to comply with the identification policy," and therefore had a "'direct and immediate' effect" on the plaintiff.  *Id.* at 1133.[13]  *See also Zoltanski v. FAA*, 372 F.3d 1195, 1196 (10th Cir. 2004) (appeals court exercised jurisdiction under section 46110 over plaintiff's challenge to a monetary fine for failing to comply with certain screening procedures including submitting personal property for explosive detection screening); *Sima Prods. Corp. v. McLucas*, 612 F.2d 309, 312-15 (7th Cir. 1980) (finding exclusive jurisdiction in court of appeals to review a challenge to an informal FAA rule concerning the use of X-ray

---

[13] The *Gilmore* court utilized the authority in 28 U.S.C. § 1631 to transfer to itself the plaintiff's case – which had initially been filed in the district court and dismissed with prejudice – thereby treating the matter as if it had been initially filed in the court of appeals. *See Gilmore*, 435 F.3d at 1133-34.

devices for inspecting carry-on baggage); *Scherfen*, 2010 WL 456784, at *10-11 (finding that district court lacked subject matter jurisdiction, pursuant to section 46110, to review TSA security directive regarding No-Fly and Selectee lists and alleged placement of individuals on those lists); *Green v. TSA*, 351 F. Supp. 2d at 1127-28 (finding that section 46110 precluded the district court from reviewing the plaintiffs' challenge to the non-public security directives that required airport screeners to take specific security measures with respect to persons identified on TSA's No-Fly or Selectee lists).

Like the security directives and screening requirements at issue in the aforementioned cases, which were all final policies that imposed binding requirements or conditions on airline travelers, the Screening Checkpoint SOP represents a definitive statement of agency policy that, together with 49 C.F.R. §§ 1540.105 and 1540.107, affects the rights of travelers who may not fly by commercial airline if they do not abide by the requirements it imposes. Accordingly, the SOP is a final order of TSA that is only reviewable under section 46110.

At least one district court has already expressed its view that a challenge to the use of AIT and pat-downs should be made in the first instance in the court of appeals. In *Blitz v. Napolitano*, the district court denied the plaintiffs' motion for a temporary restraining order and preliminary injunction challenging TSA's use of AIT scanners and pat-downs under the Fourth Amendment, in large part because the court found that it likely lacked jurisdiction under section 46110. *See Blitz v. Napolitano*, Case No. 10-930 (M.D.N.C. Dec. 10, 2010), Doc. Nos. 10 & 11 (Transcript of Oral Proceeding, at 52-62) (Attached as Exhibit 1 to Declaration of Ana. H. Voss). Specifically, the court found that

"it is, at best, unclear at this point whether this Court has jurisdiction to adjudicate plaintiffs' claims.  When I say 'at best,' what I mean by that is it seems to me I do not[,]" and that "[t]he [Screening Checkpoint] SOP on this record appears to meet the criteria set forth in Section 46110(a)[.]"  *Id.* at 53, 54.[14]

### C.  At Minimum, Plaintiff's Claims Are Inescapably Intertwined with a Challenge to the Screening Checkpoint SOP.

Even if this Court were to find that the Complaint somehow does not challenge the SOP directly, it would still lack jurisdiction over Plaintiff's claim because it is "inescapably intertwined" with the SOP.  Statutes "such as Section 46110(c) that vest judicial review of administrative orders exclusively in the court of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with the review of such orders."  *Merritt*, 245 F.3d at 187.  A claim is "inescapably intertwined" with an "order" under exclusive jurisdiction of the appeals courts if the alleged injury underlying the claim stems from such an order.  *Merritt*, 245 F.3d at 187 (citing *City of Tacoma*, 357 U.S. at 336, 339); *see Gilmore*, 435 F.3d at 1133 n.9; *Green*, 981 F.2d at 521; *Scherfen*, 2010 WL 456784, at *11-13.[15]

---

[14]  The district court in *Blitz* also found that the plaintiffs did not show that they "are likely to succeed on the merits with respect to the reasonableness of the challenged screening procedures."  *See Blitz*, *supra*, Hr'g Tr. at 57.

[15]  In *Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008), the Ninth Circuit reaffirmed its conclusion in *Gilmore*, holding that "section 46110 stripped the district court of the jurisdiction it would otherwise have had over Ibrahim's APA claim regarding [TSA's] policies and procedures implementing the No-Fly List."  *Id.* at 1257.  The court, however, questioned the applicability of the "inescapably intertwined" doctrine to actions by agencies not covered under section 46110.  *Id.* at 1254-56 (finding that the No-Fly list itself – as opposed to the TSA security directive that compels airlines to screen

Here, Plaintiff's Fourth Amendment claims are directed at the TSA screening policies that are embodied and implemented in the Screening Checkpoint SOP.  *See* Compl. ¶ 23 (alleging that, "pursuant to TSA's stated policy and practice," Plaintiff "will be required either to undergo a WBI, if available, or submit to a pat-down body search each and every time he enters airport security").   Although the Complaint does not mention the SOP specifically, it necessarily challenges the SOP.   Any of the alleged constitutional injuries that Plaintiff has asserted – from having to go through the AIT scanner, to being subjected to a pat-down, and any consequences that he claims may result  – would not have existed but for the issuance of the SOP.   Thus, if not a direct challenge to the SOP itself, his claim is inescapably intertwined with the SOP.

To the extent that Plaintiff seeks to maintain this action in district court, it constitutes a collateral attack on the SOP that is not permitted by section 46110.   When an exclusive review statute such as section 46110 applies to agency orders, collateral attacks against such orders in a forum other than the one designated by the statute are impermissible.   *See Carey v. O'Donnell*, 506 F.2d 107, 110 & n.18 (D.C. Cir. 1974) (citing *City of Tacoma*, 357 U.S. at 334-37); *see also Green*, 981 F.2d at 521 (finding that a *Bivens* claim "constitute[d] an impermissible collateral challenge to the agency order, and [that] the district court lack[ed] subject matter jurisdiction."); *Gaunce v. deVincentis*,

---

passengers against the list – was not intertwined with an "order" for purposes of section 46110, because the list was not created by TSA, but rather by a component of the FBI, which is not an agency named in section 46110).   *But see Scherfen*, 2010 WL 456784, at *12-13 (disagreeing with *Ibrahim* and finding that even the No-Fly list is intertwined with TSA orders and thus only reviewable by the courts of appeal).

708 F.2d 1290, 1292-93 (7th Cir. 1983) (finding that a constitutional challenge in district court to an FAA order was an impermissible collateral attack).

That Plaintiff characterizes his claim as a constitutional challenge, rather than a petition for review of the SOP, is immaterial, because the phrasing of a Complaint cannot "avoid the bar of a clearly applicable jurisdictional statute." *United Transp. Union v. Norfolk & Western R. Co.*, 822 F.2d 1114, 1120 (D.C. Cir. 1987) (noting that to hold otherwise would enable a "complainant's own description of its theory to determine the forum with jurisdiction"). The claim Plaintiff raises – a constitutional challenge to the SOP – and the relief he seeks – enjoining TSA from using AIT, pat-downs, or both – is within the jurisdiction of, and can be adjudicated by, the court of appeals. As a consequence, Plaintiff cannot bring this claim here. *Compare Beins v. United States*, 695 F.2d 591, 597-98 (D.C. Cir. 1982) (finding district court jurisdiction over FTCA claims for damages based on FAA's allegedly negligent denial of certain airman medical certificates, on the grounds that a court of appeals would not have jurisdiction over negligence claims and could not provide damages) *with Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213-15 (1994) (finding exclusive jurisdiction in the circuit courts where the "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals").

Moreover, permitting constitutional challenges to TSA orders to proceed in district court would defeat Congress's purpose in enacting section 46110. As the D.C. Circuit has explained:

The rationale for statutory review is that coherence and economy are best

> served if all suits pertaining to designated agency decisions are segregated in particular courts. The choice of forum is, as we have said, for Congress and we cannot imagine that Congress intended the exclusivity *vel non* of statutory review to depend on the substantive infirmity alleged. The policy behind having a special review procedure in the first place similarly disfavors bifurcating jurisdiction over various substantive grounds between district court and the court of appeals. The likelihood of duplication and inconsistency would exist in either case.

*City of Rochester*, 603 F.2d at 936.   Thus, it has been widely held that section 46110 directs to the courts of appeals exactly the sorts of constitutional claims at issue here, including, most recently, nearly identical claims to those alleged by Plaintiff.  *See Blitz*, *supra* (Fourth Amendment challenge to AIT and pat-downs) (Ex. 2, at 53-54); *see also Gilmore*, 435 F.3d at 1130 (Fourth Amendment and right to travel claims); *Gaunce*, 708 F.2d at 1293 (due process challenge to FAA procedures); *Nelson v. DHS*, No. 06-0050, 2007 WL 1655344, at *2 (W.D. Va. June 7, 2007) (constitutional challenge to TSA regulation requiring fingerprinting of drivers licensed to transport hazardous materials); *Thomson*, 2006 WL 770449, at *6 (Fourth Amendment challenge to TSA screening procedures); *Green v. TSA*, 351 F. Supp. 2d at 1127 (Fourth and Fifth Amendment challenges to TSA No-Fly list).

In sum, Plaintiff clearly challenges an order that was issued by the Administrator of TSA concerning aviation and security matters, and as such, his challenge can only be heard in the court of appeals pursuant to section 46110.  Even if there was any ambiguity on this point – and Defendants contend there is none – the ambiguity must be resolved "in favor of initial review of agency action in the court of appeals."  *Jaunich*, 50 F.3d at 521; *see also Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192 (7th Cir. 1986).

This Court accordingly lacks subject matter jurisdiction, and the Complaint should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.


Dated: March 28, 2011                              Respectfully submitted,
                                                   TONY WEST
                                                    Assistant Attorney General

                                                   B. TODD JONES
                                                   United States Attorney

                                                   SANDRA M. SCHRAIBMAN
                                                   Assistant Branch Director
                                                   Civil Division, Federal Program Branch

                                                    */s/ Tamara L. Ulrich*
                                                   TAMARA L. ULRICH
                                                   U.S. Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   P.O. Box 883
                                                   Washington, D.C. 20044
                                                   (202) 305-1432 (telephone)
                                                   (202) 616-8470 (fax)
                                                   Tamara.Ulrich@usdoj.gov

                                                   Ana H. Voss
                                                   Assistant U.S. Attorney
                                                   Attorney ID Number 483656DC
                                                   600 U.S. Courthouse
                                                   300 S. Fourth Street
                                                   Minneapolis, MN 55415
                                                   E-mail: ana.voss@usdoj.gov
                                                   (612) 664-5671


                                                   Attorneys for Defendants