UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Governor Jesse Ventura, a/k/a James Janos, | Civil No. 11-174 (SRN/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Janet Napolitano, Secretary of the Department of Homeland Security; the United States Department of Homeland Security; John S. Pistole, Administrator of the Transportation Security Administration; and the United States Transportation Security Administration, | |
| Defendants. | |

David Bradley Olsen and Wesley T. Graham, Henson & Efron, PA, 220 South Sixth St., Suite 1800, Minneapolis, Minnesota 55402, for Plaintiff.

Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, and Tamara Ulrich, United States Department of Justice, Civil Division, P.O. Box 883, Washington, D.C. 20044, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 7]. For the reasons stated below, this Court grants the Motion to Dismiss and dismisses the Complaint [Doc. No. 1].

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jesse Ventura, also known as James Janos, is the former Governor of

Minnesota, a former professional wrestler and the current host of a television program called "Conspiracy Theory." Because of his television duties, he is required to travel frequently by commercial airline. (Compl. ¶ 12.) In 2008, Governor Ventura received a titanium implant in his hip. (Id. ¶ 13.) This implant sets off the alarms on screening devices at airports. (Id. ¶ 14.) Prior to the events giving rise to the Complaint, when Governor Ventura's implant set off the screening device alarms, airport security would screen him with a hand-held "wand" metal-detection device. (Id. ¶ 15.)

On September 17, 2010, the Transportation Security Administration ("TSA") issued new security screening processes for airports nationwide.[1] These enhanced screening processes include the use of body-imaging technology, including automated imaging technology ("AIT"), which produces "detailed, three-dimensional images of the subject's body through and under clothing, including private and sensitive areas of the body." (Id. ¶ 18.) TSA has also authorized the use of physical pat-downs of some passengers. (Id. ¶ 17.) Governor Ventura contends that he has been subject to such pat-down searches, and that he will be subject to whole-body imaging, because of his hip implant, despite the fact that he poses no threat to airline safety. (Id. ¶¶ 21, 23.)

Governor Ventura claims that TSA's policies violate the Fourth Amendment,

---

[1] The TSA document that requires the implementation of the enhanced security processes, the Standard Operating Procedure or SOP, is considered to be secret for reasons of national security. (Defs.' Supp. Mem. at 5 n.3 [Doc. No. 9].) Thus, neither Governor Ventura nor this Court have been privy to the details of the enhanced screening processes or the Standard Operating Procedure.

which prohibits the Government from conducting unreasonable searches and seizures. In Count I, he seeks a declaratory judgment that TSA and the Department of Homeland Security, the Cabinet-level Department under which TSA operates, have violated his Fourth Amendment rights. (Id. ¶ 47.) In Count II, he seeks an injunction against the allegedly unconstitutional searches and seizures. (Id. ¶ 51.)

## II.    DISCUSSION

### A.    Standard of Review

The Government asks the Court to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1). Because the Government questions the Court's jurisdiction, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,891 (3d Cir. 1977)). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

This is not the first challenge to TSA's enhanced airport screening procedures to be brought in federal courts. In every case, the court has determined that it lacks jurisdiction to hear such challenges. See Roberts v. Napolitano, Civil No. 10-1966, 2011 WL 2678950 (D.D.C. July 7, 2011); Durso v. Napolitano, Civil No. 10-2066, 2011 WL 2634183 (D.D.C. July 5, 2011); Redfern v. Napolitano, Civil No. 10-12048, 2011 WL 1750445 (D. Mass. May 9, 2011); Corbett v. United States, No. 10-Civ-24106, 2011 WL

2003529 (S.D. Fla. Apr. 29, 2011).

**B.     Analysis**

The Government contends that only the Circuit Courts of Appeals may review the orders TSA promulgates.  The relevant statute provides that

> a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Under Secretary of Transportation for Security[2] with respect to security duties and powers designated to be carried out by the Under Secretary . . .) . . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business.

49 U.S.C. § 46110(a).  Governor Ventura contends that this section does not apply because the procedure at issue is not an "order" within the meaning of the statute.  Further, he argues that this Court has jurisdiction to hear constitutional challenges to government action under 28 U.S.C. §§ 1331 and 1346.

**1.     The new Standard Operating Procedure is an "order" under § 46110**

Governor Ventura argues that the enhanced screening procedure is not an "order" for the purposes of the judicial-review provision of § 46110.  According to Governor Ventura, to be an "order" under this section, the challenged decision must "(1) [be] final, (2) contemplate[] immediate compliance, (3) [be] public, and (4) [be] based on an administrative record that permits meaningful appellate review." City of Pierre v. FAA,

---

[2] For the purposes of Title 49, the Under Secretary of Transportation for Security is the same as the Administrator of the Transportation Security Administration.  49 C.F.R. § 1500.3.

150 F.3d 837, 840 (8th Cir. 1998) (citing City of Arcata v. Slater, 133 F.3d 926 (Table), No. 97-71015, 1997 WL 812258, at *1 (9th Cir. Dec. 24, 1997)). "As a general principle, 'the term 'order' in this provision [§ 46110] should be read 'expansively.'" City of Dania Beach v. FAA, 485 F.3d 1181, 1187 (D.C. Cir. 2007); see also Northwest Airlines, Inc. v. Goldschmidt, 645 F.2d 1309, 1313-14 (8th Cir. 1981) (collecting cases for the proposition that courts construe the word "order" expansively under review statutes); Aviators for Safe & Fairer Regulation v. FAA, 221 F.3d 222, 225 (1st Cir. 2000) (stating that "[t]he term 'order' is read expansively in review statutes generally and this statute [§ 46110] specifically"); New York v. FAA, 712 F.2d 806, 808 (2d Cir. 1983) ("For purposes of review under [the predecessor to § 46110], the term 'order' should receive a liberal construction.")

Governor Ventura also argues that the Standard Operating Procedure is not an "order" because it does not comply with the requirements of 49 U.S.C. § 46105. This section provides that any order "shall include the findings of fact on which the order is based and shall be served on the parties to the proceeding and the persons affected by the order." 49 U.S.C. § 46105(b). However, § 46110 does not use the term "order" in the same way as that term is used in § 46105. The word "order" in § 46110 is broader than that in § 46105 "because of [§ 46110's] function in providing for judicial review." Avia Dynamics, Inc. v. FAA, 641 F.3d 515, 520 (D.C. Cir. 2011). Thus, as courts have repeatedly held, even informal orders "not subject to the procedural requirements laid out in . . . 49 U.S.C. § 46105(b)" are reviewable under § 46110. Id. at 321; see also, e.g.,

Aerosource, Inc. v. Slater, 142 F.3d 572, 578 (3d Cir. 1998) ("[T]o be reviewable under section 46110(a), an 'order' must be final, but need not be a formal order . . . ."); Safe Extensions, 509 F.3d at 598-600 (finding that FAA advisory circular is a reviewable order under § 46110(a)). Thus, the requirements of § 46105(b) do not dictate what is a reviewable order for the purposes of § 46110.

Moreover, even if the City of Pierre standards are applicable in this case,[3] the Standard Operating Procedure at issue is an order under these standards. The Standard Operating Procedure marks the end of TSA's decisionmaking on the issue and contemplates immediate compliance. Indeed, as Governor Ventura alleges, he has been subjected to enhanced screening pursuant to the Standard Operating Procedure, and he will not be allowed to board an airplane unless he complies with the enhanced screening. An agency disposition is "'final' and thus reviewable as an order under 49 U.S.C. § 46110" when that disposition "mark[s] the consummation of the agency's decisionmaking process" and "determine[s] rights or obligations or give[s] rise to legal consequences. Safe Extensions, Inc. v. FAA, 509 F.3d 593, 598 (D.C. Cir. 2007) (quotations omitted). The Standard Operating Procedure is TSA's final decision on the issue, and it imposes consequences on passengers who refuse to comply with it.

---

[3]The language to which Governor Ventura relies upon in City of Pierre is dicta. In City of Pierre, the Eighth Circuit Court of Appeals mentioned the City of Arcata standards for determining when an agency decision constitutes an "order" but did not expressly adopt those standards. 150 F.3d at 840. Nor has that court applied those standards to any other agency action.

Further, although the details of the challenged Standard Operating Procedure are not publicly available, there is sufficient information about what the procedure requires to allow challenges to it.  And, as discussed previously, § 46105(b)'s requirement that orders be served on affected parties does not apply to § 46110.  The Standard Operating Procedure's requirements are sufficiently public to comply with the City of Pierre standards.  City of Pierre, 150 F.3d at 840

Finally, the record here, while not extensive, is sufficient to allow an appellate court to review challenges to the procedure.  As discussed above, Governor Ventura contends that the Court should look to § 46105(a)'s provisions, which require that an order include findings of fact.  49 U.S.C. § 46105.  But, as discussed, § 46105's procedural requirements do not affect whether a decision is an "order" under § 46110.  There is an administrative record in this case, and as the Government points out, if that record is not sufficient to permit appellate review, the appellate court can remand to the agency for further record development, or can appoint a special master or the district court to make factual findings.  For purposes of § 46110, the presence of a comprehensive administrative record is not dispositive.  Rather, judicial review under § 46110 is available "so long as [the challenged agency actions] are final."  Safe Extensions, 509 F.3d at 598.   It is undoubtedly so here, and thus the Standard Operating Procedure that Governor Ventura challenges is an order reviewable under § 46110.

### 2. Estoppel does not apply

Governor Ventura contends that the Government's position in this litigation is

directly contrary to the position the Government is taking in a case currently pending before the D.C. Circuit. That case, Elec. Privacy Info. Ctr. v. Napolitano, No. 10-1157 (D.C. Cir.), involves a challenge to the same Standard Operating Procedure at issue here. However, that case involves, in relevant part, the application of the Administrative Procedures Act ("APA"), 5 U.S.C. § 533, to the enhanced screening processes under the Standard Operating Procedure. This distinction is important, because the Government's argument with regard to the finality of the Standard Operating Procedure in that case is that no notice and comment period under the APA was required for the implementation of the Standard Operating Procedure, not that the Standard Operating Procedure is not final for purposes of judicial review under § 46110. The Government's position here is not contrary to the position taken in Elec. Privacy Info. Ctr., and therefore estoppel does not apply.

   3.  28 U.S.C. §§ 1331 and 1346

Finally, Governor Ventura contends that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346 to entertain constitutional challenges to the Standard Operating Procedure, because 49 U.S.C. § 46110 does not specifically foreclose district-court review of such challenges. He points to no authority for this argument, however, and the Court has found none. Rather, courts uniformly hold that all challenges to TSA orders, policies, and procedures must be brought in the Circuit Courts of Appeals under § 46110. See, e.g., Gilmore v. Gonzales, 435 F.3d 1125, 1133 (9th Cir. 2006) (district court lacked jurisdiction under § 46110 to hear constitutional challenge to TSA's no-fly list and other

8

TSA directives); Gaunce v. deVincentis, 708 F.2d 1290, 1293 (7th Cir. 1983) (predecessor to § 46110 deprived district court of jurisdiction over constitutional challenge to FAA pilot licensing procedures); Green v. Transp. Sec. Admin., 351 F. Supp. 2d 1119, 1125 (W.D. Wash. 2005) (district court has no jurisdiction to entertain Fourth Amendment challenge to no-fly and selectee lists); Redfern, 2011 WL 1750445 at *7 ("[C]ourts have widely held that Section 46110 directs to the Courts of Appeals exactly the type of claims Plaintiffs bring here which involve constitutional challenges.").

Nor is the Supreme Court's decision in McNary v. Haitian Refugee Center, Inc., 498 U.S. 479 (1991), relevant to the facts here. McNary involved a judicial review provision in the Immigration and Nationality Act, 8 U.S.C. § 1160(e)(1), that in effect foreclosed all judicial review of decisions of the Immigration and Naturalization Service ("INS") under an illegal-immigrant amnesty program. The Supreme Court found that the language of the review provision at issue did not evidence any congressional intent to restrict judicial review of constitutional challenges to INS policies and procedures. McNary, 498 U.S. at 494. The statutory language, which foreclosed judicial review of a "determination respecting an application," thus did not deprive courts of jurisdiction to hear challenges to allegedly unconstitutional practices and policies used in making those determinations. Id. Here, on the other hand, § 46110 does not foreclose all judicial review, and thus McNary's concern about the due process implications of foreclosing all judicial review are not present. In addition, § 46110 applies broadly to all "orders" that TSA and related entities might implement or promulgate, thus evidencing Congress's

intent to restrict judicial review of all challenges to final TSA decisions to the Courts of Appeals.

**C.     Conclusion**

This Court lacks jurisdiction to entertain Governor Ventura's constitutional challenges to the Standard Operating Procedure. The Government's Motion to Dismiss is therefore granted.

**III.    ORDER**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Doc. No. 7] is **GRANTED**; and

2. The Complaint [Doc. No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  November 3, 2011                                     s/Susan Richard Nelson
                                                             SUSAN RICHARD NELSON
                                                             United States District Judge